UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

RAYMOND A. COLLINS,

                Petitioner,          04-CV-1472
                                                (95-CR-232)

    v.

UNITED STATES OF AMERICA.

                Respondent.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

**DECISION & ORDER**

**I. INTRODUCTION**

    Raymond A. Collins (hereinafter "Petitioner") has filed the instant motion pursuant to 28 U.S.C. § 2255 challenging his criminal conviction for arson and conspiracy to commit arson, and his life sentence. For the reasons that follow, the motion is denied and his petition dismissed. Further, Petitioner's motions for appointment of counsel and to proceed *in forma pauperis* are denied.

**II. BACKGROUND**

    Petitioner was indicted, prosecuted, and convicted for crimes committed on behalf of an organization of drug dealers that operated in the Binghamton, New York area. See United States v. Joyner, 201 F.3d 61, 66-68 (2d Cir. 2000)("Joyner I"). In this regard, Petitioner was indicted (95-

CR-232) for arson in violation of 18 U.S.C. § 844(i), and conspiracy to commit arson in violation of 18 U.S.C. § 371. During the trial held from April 2, 1996 to June 4, 1996, the facts established that the head of the organization, Archie Joyner, directed several of his underlings to recruit people who would be willing to burn down a nightclub in which members of a rival organization sold drugs. Petitioner and another defendant, Melvin Dove, agreed to commit the arson for $500.00 each. Petitioner and Dove traveled to Binghamton in May of 1994 and, two times, went to the location to plan the arson. On May 16, 1994, Petitioner and Dove doused the exterior of the bar with gasoline and set it afire. The building was completely engulfed in flames within minutes, and totally destroyed. An elderly man who lived in an apartment above the bar, Willard Allen, died in the flames.

On June 4, 1996, the jury returned verdicts finding Petitioner guilty on both charges. He was thereafter sentenced to life imprisonment. See Joyner I, 201 F.3d at 67. Collins appealed his conviction to the United States Court of Appeals for the Second Circuit, rasing numerous grounds. See id. at 78-81. The Second Circuit set aside the restitution order and remanded for further consideration on this issue, but affirmed the conviction and sentence in all other respects. Id. Petitioner's subsequent argument that his sentence was in violation of the rule enunciated in Apprendi v. New Jersey, 530 U.S. 466 (2000),[1] was considered and rejected in a separate opinion by the Second Circuit that also denied the defendants' petition for reargument. See United States v. Joyner, 313 F.3d 40, 45-46 (2d Cir. 2002)("Joyner II"). Petitioner's petition for a writ of certiorari to the United States Supreme Court was denied on February 23, 2004. See Collins v. United States,

---

[1] In Apprendi, the Supreme Court held that constitutional due-process and jury-trial guarantees require that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

540 U.S. 1201 (2004).

On the instant § 2255 motion, Petitioner raises a number of grounds challenging his conviction and sentence. These grounds, which will be discussed more fully below, can be grouped into four categories: (1) arguments that were raised and rejected on direct review; (2) arguments that were available but not raised on direct review; (3) ineffective assistance of counsel arguments not advanced on direct review; and (4) an argument under United States v. Booker, --- U.S. ----, 125 S. Ct. 738, 160 L. Ed.2d 621 (2005). The Court will address Petitioner's arguments accordingly.

## III. DISCUSSION

### A. Issues Raised on Direct Review

It is well settled that a § 2255 petition cannot be used to "relitigate questions which were raised and considered on direct appeal." United States v. Sanin, 252 F.3d 79, 83 (2d Cir. 2001)(quoting Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992)); see United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997) ("A § 2255 motion may not relitigate issues that were raised and considered on direct appeal."). "Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980). Furthermore, new intervening law must "break new ground" or bring with it a "new obligation on the States or Federal Government." Sanin, 252 F.3d at 84 (quoting Teague v. Lane, 489 U.S. 288, 300 (1989)). "If a petitioner raises an issue that was addressed on direct appeal, the Court may find it procedurally barred in a subsequent Section 2255 motion." Graff, 269 F. Supp.2d at 78 (citing Sanin, 252 F.3d at 83).

Petitioner raises several grounds for relief under the rule enunciated in Apprendi, or that

directly challenge the Second Circuit's application of the Apprendi rule to this case. See Pet. Ground One;[2] Ground Two;[3] Ground Three;[4] Ground Four;[5] Ground Five;[6] and Ground Ten.[7] Inasmuch as: (1) the Second Circuit has addressed, and rejected, Petitioner's challenge to his sentence under Apprendi, see Joyner II, 313 F.3d at 45-46; (2) the rule enunciated in Apprendi has not been changed or overruled since the Second Circuit ruled in this case; and, (3) this Court has no authority to review, let alone overturn, a decision by a United States Court of Appeals, Petitioner's claims set forth in Grounds One, Two, Three,[8] Four, Five,[9] and Ten are procedurally barred.

---

[2] In Ground One, Petitioner asserts: "The sentence imposed is in violation of the Sixth Amendment jury trial right to have a jury determine every element of an offense."

[3] In Ground Two, Petitioner asserts: "The Court of Appeals panel which affirmed the sentence and declined to correct the Apprendi error committed manifest injustice by applying [the] wrong/incorrect standard of review."

[4] In Ground Three, Petitioner argues that his "actual innocence for the enhanced sentence in excess of the statutory maximum for the offense of conviction requires the sentence to be vacated." In support of this contention, Petitioner asserts that he

> was never charged with the knowing and intentional death of Mr. Allen, that the death of Mr. Allen was not an element the jury was instructed on and therefore, never found me guilty of beyond a reasonable doubt establishes that I am actually and factually innocent of the offense for which my sentence was imposed.

Pet. Aff., ¶ 39.

[5] In Ground Four, Petitioner asserts: "The constitutional error of not charging petitioner with the offense of knowing and intentionally causing a death by arson and having a jury determine beyond a reasonable doubt that death was caused knowingly and intentionally by arson undermines the accuracy of the sentencing determination."

[6] In Ground Five, Petitioner asserts: "The constitutional error of not charging petitioner with obstruction of justice ... and requiring such elements to be found by the jury beyond a reasonable doubt undermine the sentence determination and violates petitioner's constitutional rights."

[7] In Ground Ten, Petitioner asserts that his sentence violates his Sixth Amendment rights because the Court determined "the presence of aggravating factors" that increased his sentence. Petitioner raises this argument under Ring v. Arizona, 536 U.S. 584 (2002). However, Ring did not create a new substantive rule, but merely applied Apprendi to determinations of death penalty eligibility. See Schriro v. Summerlin, --- U.S. ----, 124 S.Ct. 2519, 2522-23 (2004). Because this was a death penalty case, Ring is inapplicable and the Court considers the argument under Apprendi.

[8] To the extent the argument raised in Ground Three differs from the Apprendi argument raised and rejected on direct appeal, it is procedurally barred now because (1) the argument was available on direct appeal and Petitioner has

(continued...)

In Grounds Seven and Nine, Petitioner argues that the building that he burned down had no nexus with interstate commerce and, thus, was not covered by the statutes that he was convicted of violating. The Second Circuit has already considered, and rejected, this argument. Joyner I, 201 F.3d at 78-79. Therefore, Petitioner's claims premised upon the same argument (e.g. Grounds Seven and Nine) are procedurally barred.

For the same reason, the claim asserted in Ground Eight is also procedurally barred. In this regard, the Second Circuit has considered, and rejected, Petitioner's claim that he was denied constitutionally effective assistance of counsel because counsel failed to object to the jury charge that allowed the jury to consider the question of the whether the burned-down building had a nexus with interstate commerce. See id. at 81.[10]

### B. Issues Available But Not Raised on Direct Review

The Court next turns to those claims that are premised upon arguments that were available, but not raised, on direct review.

---

[8](...continued)
demonstrated no cause for his failure to raise it; and, (2) Petitioner has failed to establish his actual innocence of the crimes for which he was convicted. See Discussion, part III(B), infra.

[9] To the extent the Apprendi argument raised in Ground Five differs from the Apprendi argument raised and rejected on direct appeal, it is nevertheless procedurally barred now because (1) the argument was available on direct appeal and Petitioner has demonstrated no cause for his failure to raise it; and, (2) Petitioner has failed to establish his actual innocence of the crimes for which he was convicted. See Discussion, part III(B), infra.

[10] In this regard, the Circuit held:

> Collins also argues that he was denied his right to effective assistance of counsel because his trial counsel ... failed to object to the judge's charge on the interstate commerce element .... However, as to the ... interstate commerce issue[], we see no omission that could have affected the outcome of the trial. ... The second prong of Strickland, a showing of prejudice, has therefore not been met as to that issue. Strickland v. Washington, 466 U.S. 668, 695-96, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Joyner I, 201 F.3d at 81.

"It is well settled that a Section 2255 motion is not a substitute for direct appeal." Graff v. United States, 269 F. Supp.2d 76, 78 (E.D.N.Y. 2003)(citing United States v. Frady, 456 U.S. 152, 165 (1982); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)). Accordingly, "Section 2255 claims not raised on direct review are procedurally barred unless they raise constitutional or jurisdictional claims, or result in a 'complete miscarriage of justice.' " Johnson v. United States, 313 F.3d 815, 817 (2d Cir. 2002) (quoting Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996)). "Where a criminal defendant has procedurally forfeited his claim by failing to raise it on direct review, the claim may be raised in a § 2255 motion only if the defendant can demonstrate either: (1) cause for failing to raise the issue, and prejudice resulting therefrom; or (2) actual innocence." Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)(citing Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)); see Arroyo v. United States, 2002 WL 662892, at * 2 (S.D.N.Y. April 22, 2002)(same)(citing Amiel v. United States, 209 F.3d 195, 198 (2d Cir. 2000)). This rule does not apply to claims of ineffective assistance of counsel. Massaro v. United States, 123 S. Ct. 1690, 1696 (2003)(A Section 2255 ineffective assistance of counsel claim is not barred even if not raised on direct appeal).

To demonstrate cause, a petitioner must be able to show that the factual basis for a claim was not reasonably available, despite the exercise of reasonable diligence. United States v. Helmsley, 985 F.2d 1202, 1205-08 (2d Cir. 1993). The "cause" must be "something *external* to the petitioner, something that cannot fairly be attributed to him ...." Coleman v. Thompson, 501 U.S. 722, 753 (1991)(emphasis in original).

In order to establish "actual innocence," a movant must "demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Bousley v.

6

United States, 523 U.S. 614, 623 (1998). Actual innocence means "factual innocence, not mere legal insufficiency." Id. "The Supreme Court in Bousley also made clear that when a habeas petitioner is required to meet the 'actual innocence' standard, he must satisfy a higher hurdle than the 'prejudice' prong of the cause and prejudice standard." De Jesus v. United States, 161 F.3d 99, 103 (2d Cir. 1998).

Petitioner asserts in Ground Twelve that he was denied a fair trial because of a brief communication between the Court and a juror during the deliberation process.[11] Petitioner provides no explanation as to why the claim was not raised on direct appeal, although the facts were known at the time. Therefore, he fails to demonstrate sufficient cause to allow the claim to go forward. See Hardy v. United States, 878 F.2d 94, 96 (2d Cir. 1989)(collateral attack on grounds of recusal not allowed, absent exceptional circumstances, "if the opportunity to do so existed at a time when direct review was available.").[12] Further, Petitioner fails to establish his actual innocence of the crimes he

---

[11] The context of this situation arose from a morning encounter prior to the start of the day's proceedings when a very distraught juror asked to speak to the undersigned. See Transcript, pp.5891-93. Unable to immediately locate the court reporter, and given the distraught nature the juror appeared to be in, I asked why the juror was upset. She advised that another juror had yelled at her because she took a different side on an issue they had been discussing. I briefly explained the jury system to her and her right to persist in her views, and told her if she felt physically threatened to tell the foreman and that the Court and attorneys would address the situation at that juncture. I then related this information to the attorneys while in Chambers and on the record, and none of the attorneys asked for any further inquiry of the juror, or any other action, at that time.

[12] Petitioner has also made a motion for recusal on the grounds that the undersigned would be a potential witness in any hearing on this claim. The motion for recusal is denied on two grounds. First, there is no need for a hearing as the claim is procedurally barred.

Second, there is no legal basis for recusal. Petitioner's argument sounds of classic example of "judge shopping" and has no legal merit. See United States v. Persico, 1993 WL 385799, at *1 (S.D.N.Y. Sept. 29, 1993)(Section 2255 petitioner's first argument for recusal "is rejected as utter nonsense."). In this regard, it is well settled that "[i]n deciding whether to recuse himself, the trial judge must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over the case. Litigants are entitled to an unbiased judge; not to a judge of their choosing." In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1312 (2d Cir. 1988)(citation omitted), cert. denied, 490 U.S. 1102 (1989); see United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992); United States v. Terry, 802 F. Supp.

(continued...)

was convicted of committing. Accordingly, Petitioner's claim of the denial of fair trial is procedurally barred.

### C. Ineffective Assistance of Counsel

Petitioner also raises an ineffective assistance of counsel argument that was not raised on direct appeal. In this regard, Petitioner asserts that he was denied constitutionally effective assistance of counsel when his trial counsel "failed to secure his Due Process and Jury Trial rights to be present during critical stages of the proceedings and to confrontation in addition to having his fate determined by a jury unaffected by outside influences." Pet. Ground Eleven. Petitioner's argument is premised upon the proposition that his attorney should have "lodge[d] an[] objection" to the Court's brief discussion with the juror as more fully set forth in footnote 11, *supra*, or

---

[12](...continued)
1094 (S.D.N.Y. 1992). "A judge is as much obliged not to recuse himself when it is not called for as he is obliged to when it is." In re Drexel Burnham Lambert, Inc., 861 F.2d at 1312.

Both 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1) require disqualification when a judge is shown to have a personal bias or prejudice against a party or in favor of any adverse party. See Hoffenberg v. Hoffman & Pollok, 2002 WL 31444994, at *1 (S.D.N.Y. Oct. 31, 2002). "It is well-established that under [28 U.S.C. §§ 455(b)(1) & 144], which employ the same analysis in establishing whether personal bias or prejudice exists, [the court] 'looks to extrajudicial conduct as the basis for making such a determination, not conduct which arises in a judicial context.'" Terry, 802 F. Supp. at 1097-98 (quoting Apple v. Jewish Hospital and Medical Center, 829 F.2d 326, 333 (2d Cir. 1987)); see United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)(under § 144, "the alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case."); see also Litkey v. U.S., 510 U.S. 540, 548 (1994)(Because § 455(b)(1) encompasses § 144, the two can be read together.).

"The substantive standard for recusal [under §§ 144 & 455(b)(1)] is whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned." Terry, 802 F. Supp. at 1097-98 (quoting Apple v. Jewish Hospital and Medical Center, 829 F.2d at 333); see De Luca v. Long Island Lighting Co., 862 F.2d 427, 429 (2d Cir. 1988)(The standard under § 455(a) is "whether an objective, disinterested observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt that justice would be done in the case." )(internal quotation and citation omitted); S.E.C. v. Grossman, 887 F. Supp. 649, 658 (S.D.N.Y. 1995), aff'd, 101 F.3d 109 (2d Cir. 1996)(same).

Here, the Court finds that no such conditions exist to warrant recusal. The challenged bias neither arises from "extra-judicial" conduct, nor presents a situation from which a reasonable would conclude that the court's impartiality might reasonably be questioned. Petitioner's application for recusal is wholly without merit.

requested the juror be interrogated as to what occurred and what was told to her. See id.

In order to state a cognizable Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ...defendant." United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89).

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

At the time the Court encountered Juror # 9 in the hallway, deliberations were on-going. The Court related to the attorneys that Juror # 9 had held a certain view or position on something,

but that she changed that position after she was yelled at by a male juror. Trans. pp. 5891-93. Juror # 9 further told the Court that she was not going to change her position again, and the Court advised her that she had the right to persist in her view. Id. Having related this to the attorneys, it was not professionally unreasonable for none of the attorneys to request that Juror # 9 be interviewed, or that any other action be taken. Id. Such an interview, if allowed, would not have involved any discussion of the issue that she referred to, nor would it have allowed *any* indication of the numerical division of the jurors on *any* issue or count. A reasonably competent attorney would have drawn the conclusion that the jurors were split on the question of guilt of at least one defendant on at least one count. After having been told by the Court that the juror was told she could persist in her view and should advise Court if she felt threatened, a reasonably competent defense attorney would have made the strategic choice *not* to request interrogation of the juror (as all defense counsel decided) because such interrogation *could have* led to dismissal of a juror who might have been holding out for acquittal.

The strategic choice to do nothing was not brought into question because of jury note # 38. Note # 38 asked what happens when a juror's verdict is not freely given. As the Petitioner acknowledges, the Court answered the question by advising that a juror's verdict that is not freely given "is not a verdict. Each juror's verdict must be freely given." Trans. p. 5917-18. A reasonably competent defense attorney would have viewed this question, and this answer, as further indication that the jury would be unable to return a unanimous verdict on at least one count. Given the ability of the attorneys to poll the jurors after the jury returned its verdict, it was not below an objective standard of reasonableness for each attorney to sit back and hope the dispute between the jurors involved a count against their own client. Indeed, the benefit of hindsight reveals that the jurors

were split on the question of guilt of two of Petitioner's co-defendants (Barrett and Sweat) resulting in the jury being unable to resolve the counts against them (thus resulting in a second trial for these defendants).

Petitioner's cursory contention that trial counsel did not act in a professionally competent manner does not overcome the "'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004)(quoting Strickland, 466 U.S. at 689). Petitioner has not surmounted the "presumption that counsel's conduct 'might be considered sound trial strategy.'" Cox, 387 F.3d at 198 (quoting Strickland, 466 U.S. at 689. Accordingly, Petitioner's claim fails under the first prong of Strickland. See Parnes v. United States, 1995 WL 758805, at *3 (S.D.N.Y. Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged errors of Petitioner's counsel fell below 'prevailing professional norms'.... Accordingly, the Court rejects Petitioner's claim that he received ineffective assistance of counsel."); Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was ineffective fails "to establish that his counsel's performance was deficient [and] .... fails to overcome the presumption [under Strickland] that counsel acted reasonably...."). Further, having presided over the trial, the Court finds no merit to Petitioner's contention that his attorney acted in a professional deficient manner as it related to the Court's brief discussion with Juror # 9.

Even assuming *arguendo* that Petitioner's counsel acted in a constitutionally ineffective manner with regard to this issue, the claim fails on the second prong of Strickland. Petitioner cannot demonstrate that *but for* some other action by trial counsel, the result of the trial would have been different. Strickland, 466 U.S. at 694; see Slevin v. United States, 1999 WL 549010, at *5

(S.D.N.Y. 1999)(a habeas petitioner must show how counsel's failures prejudiced the outcome of the trial), aff'd, 234 F.3d 1263 (2d Cir. 2000). This is because the evidence of Petitioner's guilt was overwhelming. See United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002)(In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" ). The government introduced evidence from Joyner that he initially paid Petitioner $500 to burn down the building, and that after Petitioner completed the task and learned that Mr. Allen had died in the blaze, Petitioner solicited another $500 for his efforts. There is no basis, other than pure speculation, to conclude that results of the trial would have been different for Petitioner had his counsel done something different with regard to the issues surrounding Juror # 9. Accordingly, the claim fails on the second prong of Strickland. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

### D.  United States v. Booker

In Ground Six, Petitioner asserts that under the holding of Blakely v. Washington, --- U.S. ----, 124 S. Ct. 2531 (2004), his sentence is illegal. By logical extension, the Court interprets the *pro se* petition to also assert that his sentence is illegal under United States v. Booker, --- U.S. ----, 125 S. Ct. 738 (2005). See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(Pro se pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest."). However, neither Blakely nor Booker apply retroactively to cases on collateral review. See Guzman v. United States, 404 F.3d 139, 140 ("We now hold that Booker does not apply retroactively to cases on collateral review...."), 144 ("For the reasons stated above, Booker is not retroactive, i.e., it does not

apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued.")(2d Cir. 2005); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004)(Blakely not retroactively applicable to cases on collateral review); Garcia v. United States, No. 04-cv-0465, 2004 WL 1752588 (N.D.N.Y. Aug. 4, 2004)(McAvoy, S.J.)(Blakely does not apply retroactively to cases on collateral review.). Therefore, the claim asserted in Ground Six is dismissed.

### E.  Appointment of Counsel/ IFP Status

Inasmuch as Petitioner fails to raise any issues on the instant motion that would entitle him to relief, his motion for appointment of counsel is denied. United States v. Doe, 2005 WL 167601, at * 1 (S.D.N.Y. Jan. 25, 2005); Toron v. United States, 281 F. Supp.2d 591, 593 (E.D.N.Y. 2003); see 18 U.S.C. § 3006A(a)(2)(B) ("Whenever the United States magistrate or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who ... is seeking relief under section 2241, 2254, or 2255 of title 28." ).   Petitioner's motion to proceed *in forma pauperis* is denied as moot.

### F.  Certificate of Appealability

Finally, the Court finds that Petitioner presents no viable issues upon which reasonable jurists could debate whether: (a) the sentence was imposed in violation of the Constitution or laws of the United States; (b) the Court was without jurisdiction to impose such sentence; (c) the sentence was in excess of the maximum authorized by law; or (d) the sentence is otherwise subject to collateral attack.  Therefore, a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is denied. See Miller-El v. Cockrell, 537 U.S. 322, 123 S.Ct. 1029, 1039-1040 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Barefoot v. Estelle, 463 U.S. 880, 893 (1983).

**III. CONCLUSION**

For the foregoing reasons, Petitioner's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and his petition is **DISMISSED**. His motion for appointment of counsel is **DENIED**, and his motion to proceed *in forma pauperis* is **DENIED as moot**. A Certificate of Appealability pursuant to 28 U.S.C. § 2253 is also **DENIED**

**IT IS SO ORDERED**.

DATED:   July 20, 2005

_____
Thomas J. McAvoy
Senior, U.S. District Judge